### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| MATTHEW GRIMES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Cause No. 1:11-cv-377-WTL-DKL |
| THE CITY OF INDIANAPOLIS, et al., | ) ) ) |
| Defendants. | ) |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

The cause is before the Court on Defendant Christamore House's motion for summary judgment (dkt. no. 85). The motion is fully briefed, and the Court, being duly advised, rules as follows.

### I.   STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court accepts as true the admissible evidence presented by the non-moving party and draws all reasonable inferences in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.  BACKGROUND

The following are facts of record as viewed in the light most favorable to the non-moving party, Plaintiff Matthew Grimes.  Additional relevant facts are included in the Discussion section below.

In July 2010, Defendant Willard Gupton was employed by the Indianapolis Department of Parks and Recreation as the director of the Municipal Gardens Family Center ("Municipal Gardens").  Gupton was responsible for organizing the programs that were offered at Municipal Gardens, including a youth basketball league.  The basketball league included a social development component, such that the players were required to attend educational workshops and presentations in order to participate in the league.

Gupton contacted the Indianapolis Metropolitan Police Department ("IMPD") and asked if an officer would be willing to speak at the basketball league's end-of-the-summer summit on July 24, 2010.  Grimes, who was a community relations sergeant with IMPD, agreed to do so.

Unbeknownst to Grimes, Gupton and his friend Defendant Jimmie Harrington had arranged for Defendant Ennis Adams, Jr., who is an amateur actor, and another man to cause a disturbance during Grimes's presentation.  Both Harrington and Adams were employed by Defendant Christamore House.  As Gupton described it, the men planned the staged fight because they

> wanted to give youth a different view of how they looked when they are engaged in confrontations and violence.  We wanted them to understand that the officers would protect and serve at a moment's notice.  Lastly, we wanted them to understand how difficult it is to be an officer of the law when dealing with the youth.

Gupton Dep. at 35.  Pursuant to the plan, Grimes's presentation to the young basketball players was interrupted by what appeared to be two men engaged in a fistfight in the audience.  Grimes,

who was in his full police uniform, left the podium and approached the two men, unaware that the fight was staged. As Grimes attempted to separate the men he was launch through the air, causing him to land hard on his knees. Grimes attempted to call for backup, but his radio was dislodged from his shoulder.  He then reached for his Taser, but before he could engage it Harrington intervened, explaining the fight was staged.  Grimes later learned that he suffered a herniated disc during the incident.

Grimes returned to the podium and continued to address the audience while trying to maintain his composure. After Grimes finished his presentation, Gupton and Harrington addressed the audience to discuss the staged fight.

## II.  DISCUSSION

Grimes asserts claims pursuant to 42 U.S.C. § 1983 as well as various supplemental state law claims. At issue in the instant motion are his claims against Christamore House seeking to hold it liable for the alleged negligent acts of its employees, Harrington and Adams.

Under Indiana law, "the doctrine of respondeat superior imposes liability on an employer for the wrongful acts of his employee committed within the scope of employment." *Hurlow v. Managing Partners, Inc.*, 755 N.E.2d 1158, 1161 (Ind. App. 2001) (citing *Stropes v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989)). "Acts done 'on the employee's own initiative, with no intention to perform it as part of or incident to the service for which he is employed' are not 'in the service of the employer' and are thus outside the scope of employment." *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 105 (Ind. 1997) (quoting *Stropes*, 547 N.E.2d at 247).

However, an employer is liable under the doctrine of respondeat superior if: (1) an employee's act furthered the employer's business interest to an appreciable extent; or (2) if an

employee's authorized acts and unauthorized acts are so closely associated that the employee can be said to have acted within the scope of his employment. *Hurlow v. Managing Partners, Inc.*, 755 N.E.2d 1158, 1163 (Ind. App. 2001). If some of the employee's actions were authorized, the question of whether the unauthorized acts were within the scope of employment is one for the jury. *Konkle v. Henson*, 672 N.E.2d 450, 457 (Ind. App. 1996).

In this case, Harrington testified unambiguously and emphatically during his deposition that his involvement with the Municipal Gardens youth basketball league had nothing to do with his employment with Christamore House. Harrington has been a very active volunteer in his community for many years and participated in the basketball league as a volunteer prior to becoming a Christamore House employee. He testified that he was there on the day in question on his own time and not as a representative of or as part of his work at Christamore House. He further testified that the same was true of Adams.

Based on this testimony, Christamore House argues that this case involves the type of "[a]cts done on the employee's own initiative, with no intention to perform it as part of or incident to the service for which he is employed" that cannot be the basis of employer liability because they "are not in the service of the employer and are thus outside the scope of employment." *Warner Trucking*, 686 N.E.2d at 105. The Court agrees that Harrington's testimony supports that conclusion. However, for summary judgment purposes the Court must view the evidence of record in the light most favorable to the non-moving party, Grimes. In addition to Harrington's testimony, the record also contains the testimony of Gupton, who testified as follows:

> Q: Did anyone from Christamore House participate in running the summer basketball league?
>
> A: Rev. Harrington had a team that was part of it.

> Q: What role did he play?
>
> A: I believe he just offered the transportation for them, but he was also directly involved with their teen program . . . Christamore House teen program. And he conducted a workshop that summer for us, also. And was also there just as another adult to be on hand and help out.
>
> Q: Okay. How about Ennis Adams, did he participate in the summer basketball league somewhat?
>
> A: Just that one particular workshop in particular.
>
> Q: The one workshop where the incident occurred.
>
> A: Yeah, the one where the incident occurred.
>
> Q: How did he get involved in that?
>
> A: He was asked to participate by Rev. Harrington.

Gupton Dep. at 21-22. For summary judgment purposes, the Court must assume that the jury will hear and credit this testimony by Gupton. Given that assumption, the Court cannot say, as a matter of law, that no reasonable jury could find that at least Harrington's participation in the basketball league—and therefore the incident in question—was incident to his employment at Christamore House.

Christamore House's motion for summary judgment is based on its assertion that Harrington's and Adams' presence at Municipal Gardens on the day in question, as well as their participation in the planning and execution of the staged fight, had "nothing to do with" Christamore House.[1] Based on the evidence of record viewed in the light most favorable to

---

[1] In its reply brief, Christamore House correctly notes that the ultimate issue is "not whether Adams and Harrington were generally acting within the scope of their employment with Christamore House by their mere presence at the Community Center that day," but rather "whether the planning and participation in the staged fight by Harrington and Adams were within the scope of their employment with Christamore House." Reply Brief at 2. Christamore House is incorrect, however, when it concludes that "[s]ince the Plaintiff has failed to submit any evidence which evens implies that the planning and participation in the staged fight was either authorized by or furthered the business of the Christamore House, summary judgment in favor of

Grimes, the Court cannot make that finding as a matter of law.  Accordingly, Christamore House's motion must be denied.

### III. CONCLUSION

For the reasons set forth above, Defendant Christamore House's motion for summary judgment is **DENIED.**

This cause is set for a final pretrial conference on September 20, 2013, and a jury trial on October 21, 2013.  The parties are reminded of the pre-trial preparation deadlines set forth in the case management plan entered in this cause.

SO ORDERED:  08/09/2013

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

Christamore House is appropriate." *Id.*  Rather, as Christamore House recognizes, "even unauthorized acts will fall into the scope of any employee's employment if they are closely related to authorized acts" and "when some of the employee's acts are authorized, the question of whether other acts were authorized as well goes to the jury." *Id.*  In this case, then, if Adams and Harrington were at the Municipal Gardens that day as part of their jobs with Christamore House, it will be up to the jury to determine whether any negligent actions on their part were authorized by or closely related to acts authorized by Christamore House.